UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1668

_____

KEVIN ROTKISKE,

Appellant-Plaintiff,

v.

PAUL KLEMM, ESQ.; NUDELMAN,
KLEMM & GOLUB, P.C.; NUDELMAN,
NUDELMAN & ZIERING, P.C.; and
KLEMM & ASSOCIATES,

Appellees-Defendants.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Case No. 2:15-cv-3638-GEKP)
District Judge: Hon. Gene E.K. Pratter, U.S.D.J.

_____

**APPELLEES' BRIEF**

_____

Carl E. Zapffe, Esq.
N.J. Attorney ID No. 04564-2004
Fenton & McGarvey Law Firm, P.S.C.
2401 Stanley Gault Parkway
Louisville, KY 40223
973-945-8808 (Direct)
czapffe@fenton-mcgarvey.com

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 16-1668

—————

KEVIN ROTKISKE,

Appellant-Plaintiff,

v.

PAUL KLEMM, ESQ.; NUDELMAN,
KLEMM & GOLUB, P.C.; NUDELMAN,
NUDELMAN & ZIERING, P.C.; and
KLEMM & ASSOCIATES,

Appellees-Defendants.

———————————————————

**Appellees' Corporate Disclosure Statement**
**(Pursuant to Fed. R. App. P. 26.1 and 3d Cir. L.A.R. 26.1.1)**

———————————————————

Pursuant to Fed. R. App. P. 26.1 and 3d Cir. L.A.R. 26.1.1, Appellees hereby

inform the Court that (1) no Appellee has a parent corporation; and (2) no Appellee

has a public corporation that owns 10% or more of its stock.

By way of further clarification and disclosure, on December 1, 2014, Fenton

& McGarvey Law Firm, P.S.C. ("F&M"), acquired Nudelman, Klemm & Golub, P.C.

(which was formerly known as Nudelman, Nudelman & Ziering, P.C., which was the

successor-in-interest to Klemm & Associates).  However, F&M likewise does not have a parent corporation, and there is no public corporation that owns 10% or more of F&M's stock.

Pursuant to Fed. R. App. P. 26.1(b), Appellees will promptly file a supplemental statement if there are any changes to the foregoing ownership information.

Respectfully Submitted,
Fenton & McGarvey Law Firm, P.S.C.

Dated: October 24, 2016                By:   */s/Carl E. Zapffe*
Carl E. Zapffe, Esq.
N.J. Attorney ID No. 04564-2004
Fenton & McGarvey Law Firm, P.S.C.
2401 Stanley Gault Parkway
Louisville, KY 40223
502-560-6700 (Phone)
502-560-6800 (Fax)
973-945-8808 (Cell)
czapffe@fenton-mcgarvey.com

# TABLE OF CONTENTS

Section                                                                                                   Page

Corporate Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

I.     Factual History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

I.     The Wording of § 1692k(d) is Clear and Unambiguous, and
       Therefore it Must be Applied as Written . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    Section 1692k(d) is an Occurrence Statute, Not a Discovery
       Statute, and its Limitations Period Should be Applied Accordingly . . . . . 11

III.   The Fact that Congress Has Not Changed the Wording of
       § 1692k(d) is Proof that its Members are Satisfied with the
       Statute's Current Wording . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    A Careful Study of the Applicable Case Law Reflects that it
       Supports Defendant's Position in this Regard . . . . . . . . . . . . . . . . . . . . . . . 16

       A.     The Initial Two Cases: *Mattson* and *Maloy* . . . . . . . . . . . . . . . . . . 16

B.    The Landmark Supreme Court Case of TRW . . . . . . . . . . . . . . . . . 20

C.    The Current Post-*TRW* Landsape . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    Plaintiff's Argument that the FDCPA's Statute of
Limitations is Not Jurisdictional Does Not Help His Case . . . . . . . . . . . 26

VI.   If the Court Determines that Fed. R. Civ. P. 56 Should Have Been
Used, then Plaintiff Failed to Support His Claim Regarding the
Date on Which He Purportedly Learned of the Judgment . . . . . . . . . . . . 28

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Combined Certifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Proof of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

| Auth. | Federal Statutes | Page(s) |
|---|---|---|
| 15 U.S.C. § 77m | | 15 |
| 15 U.S.C. § 1679i | | 16 |
| 15 U.S.C. § 1681p | | 20, 21, 22 |
| 15 U.S.C. § 1691e(f) | | 16 |
| 15 U.S.C. § 1692(e) | | 17 |
| 15 U.S.C. § 1692k | | 10, 15 |
| 15 U.S.C. § 1692k(d) | | 8, 10, 11, 12, 14, 15, 16, 17, 22, 25 |
| 18 U.S.C. § 1030(g) | | 15 |
| 42 U.S.C. § 9612(d)(2) | | 15 |

| Auth. | Federal Rules of Appellate Procedure | Page(s) |
|---|---|---|
| Fed. R. App. P. 26(a)(1)(C) | | 8 |
| Fed. R. App. P. 31(a)(1) | | 8 |

| Auth. | Federal Rules of Civil Procedure | Page(s) |
|---|---|---|
| Fed. R. Civ. P. 12(b)(6) | | 7 |
| Fed. R. Civ. P. 12(d) | | 28 |
| Fed. R. Civ. P. 56 | | 28 |

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

| Auth. | Supreme Court Cases | Page(s) |
|---|---|---|

*Barnhart, Commissioner of Social Security v. Sigmon*
    *Coal Co., Inc.*, 534 U.S. 438 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bay Area Laundry and Dry Cleaning Pension Trust Fund*
    *v. Ferbar Corp. of Cal.*, 522 U.S. 192 (1997) . . . . . . . . . . . . . . . . . . . 15, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Board of Regents v. Tomanio*, 446 U.S. 478 (1980) . . . . . . . . . . . . . . . . . . . . . . . 18

*Burnett v. New York Central Railroad Co.*, 380 U.S.
    424 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Caminetti v. United States*, 242 U.S. 470 (1917) . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . 26, 27

*John R. Sand & Gravel Co. v. United States*, 552 U.S.
    130 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Packard Motor Car Co. v. NLRB*, 330 U.S. 485 (1947) . . . . . . . . . . . . . . . . . . . . 14

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001) . . . . . 15, 16, 20, 21, 22, 23, 24, 25, 26

*Unexcelled Chemical Corp. v. United States*, 345 U.S.
    59 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

| Auth. | Third Circuit Cases | Page(s) |
|-------|---------------------|---------|

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . 1

*Houghton v. Ins. Crime Prevention Institute*, 795 F.2d 322
    (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . . 1

*Peterson v. Portfolio Recovery Associates, LLC*, 430
    F. App'x 112 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Quiroga v. Hasbro, Inc.*, 934 F.2d 497 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 28

*Santos v. United States*, 523 F. Supp. 2d. 435 (M.D. Pa.
    2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Schoch v. First Fidelity Bancorp.*, 912 F.2d 654 (3d Cir.
    1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245
    (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

| Auth. | Cases from Other Circuits | Page(s) |
|-------|---------------------------|---------|

*Bello v. Barden Corp.*, 180 F. Supp. 2d 300 (D. Conn.
    2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Benzemann v. Citibank, N.A.*, 806 F.3d 98 (2d Cir. 2015) . . . . . . . . . . . 18, 19, 26

*Butler v. J.R.S-I, Inc.*, No. 15-cv-6059 (N.D. Ill. Apr. 4,
    2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Grigoriou v. First Resolution Investment Corp.*,
    No. 13-cv-6008 (W.D.N.Y. Mar. 26, 2014) . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002) . . . . . . . . . . . . . . . . . 19, 24, 26

*Kindle v. Morisset, Schlosser, Ayer & Jozwiak*, 217 F.3d
        602 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Lembach v. Bierman*, 528 F. App'x 297, 301-02 (4th Cir.
        2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Mangum v. Action Collection Serv., Inc.* 575 F.3d 935
        (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25, 26

*Maloy v. Phillips*, 64 F.3d 607 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 16, 18, 24

*Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259
        (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18, 19, 24

*Mitchell v. Collagen Corp.*, 870 F. Supp. 885 (N.D. Ind.
        1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Moss v. Barton*, No. 13-cv-2535 (E.D. Mo. Apr. 8, 2016) . . . . . . . . . . . . . . . . . . 27

*Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732
        F.3d 440 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Snyder v. U.S. Equities Corp.*, 12-cv-6092 (W.D.N.Y.
        Jan. 28, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thompson v. Ocwen Fin. Corp.*, No. 3:13-cv-386
        (D. Conn. Aug. 27, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Joyner*, 313 F.3d 40 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Murphy*, 35 F.3d 143 (4th Cir. 1994),
        *cert. denied*, 513 U.S. 1135 (1995) . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 14

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 2

| Auth. | State Statutes | Page(s) |
|-------|---------------|---------|
| Conn. General Statutes § 52-577 | | 13 |
| Ind. Code § 24-5-0.5-5(b) | | 12 |
| Ind. Code § 34-18-7-1(b) | | 12 |
| S.D. Codified Laws § 15-2-14.2 | | 13 |

| Auth. | State Cases | Page(s) |
|-------|-------------|---------|
| *Brinkman v. Bueter*, 879 N.E.2d 549 (Ind. 2008) | | 12 |
| *Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553 (Conn. 2014) | | 13 |
| *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999) | | 12 |

## STANDARD OF REVIEW

The Court is being asked to review a district court's decision granting a motion to dismiss. As such, the standard of review is plenary. *See*, *e.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). In reviewing a motion to dismiss, the Court must admittedly accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

However, only well-pleaded factual allegations are entitled to this charitable deference: Legal conclusions, on the other hand, must be completely disregarded. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Court may dismiss a complaint "if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir. 1989) (citation omitted).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The only issue in the matter at hand is whether the "discovery rule" should be applied to the FDCPA's one-year statute of limitations, when the complaint was filed *five years* after the statute would have otherwise expired. (*See* Defendants' Motion to Dismiss, Brief at 11-14 [Appendix at 62a-65a]; Plaintiff's Objection at 4-5 [Appendix at 73a-74a]; Defendants' Reply Brief at 2-5 [Appendix at 82a-85a].)

Plaintiff also argued below that the statute of limitations should be equitably tolled by the doctrine of fraudulent concealment.  However, Plaintiff has not argued this point on appeal, and "[i]t is well established that an argument not raised on appeal is deemed abandoned and lost." *United States v. Joyner*, 313 F.3d 40, 44 (2d Cir. 2002).  *See also United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("[an appellate court] will not consider an argument raised for the first time in a reply brief").

## STATEMENT OF THE CASE

### I.    FACTUAL HISTORY.

1.    Sometime in or around 2003, Appellant-Plaintiff Kevin Rotkiskie (hereinafter "Plaintiff") obtained a credit card from Capital One Bank (USA), N.A. ("Capital One").  (*See* Plaintiff's First Amended Complaint at ¶ 6 [Appendix at 8a]; Plaintiff's Appellant's Brief at 9.)

2.    Plaintiff ultimately breached his agreement with Capital One by failing to make the monthly minimum payments—a fact that Plaintiff openly admits.  (*See* Plaintiff's First Amended Complaint at ¶ 6 [Appendix at 8a]; Plaintiff's Appellant's Brief at 9.)

3.    As a result of this breach, Capital One closed Plaintiff's credit card account, and ultimately retained the law firm of Appellee-Defendant Klemm &

-2-

Associates ("K&A") to collect the balance due on the defaulted account. (*See* Certification of Paul J. Klemm ("Klemm Cert.") at 7 [Appendix at 19a].)

4.    On March 14, 2008, K&A filed suit in the Philadelphia Municipal Court under docket number SC-08-03-14-5522 (the "first collection suit"). (*See* Klemm Cert. at ¶ 9 [Appendix at 19a].)

5.    The municipal court's website reflects an affidavit of service stating that Plaintiff was personally served, but likewise contains a letter purportedly written by a third party stating that Plaintiff did not reside at the address where service was effectuated. (*See* Klemm Cert. at ¶ 10 [Appendix at 19a].)

6.    On May 14, 2008, the first collection suit was withdrawn without prejudice. (*See* Klemm Cert. at ¶ 11 [Appendix at 19a].)

7.    Despite Plaintiff's claim that the lawsuit was withdrawn because Plaintiff could not be located, the K&A file does not state the reason why the suit was withdrawn—nor, for that matter, does the court's website clarify whether it was withdrawn based on K&A's request, or whether it was withdrawn *sua sponte* by the court. (*See* Klemm Cert. at ¶ 12 [Appendix at 19a-20a].)

8.    Shortly thereafter, Appellee-Defendant Paul Klemm, Esq. ("Klemm"), the managing attorney of K&A, accepted a position as managing partner of Appellee-Defendant Nudelman, Nudelman & Ziering, P.C. ("NNZ"), which subsequently became Appellee-Defendant Nudelman, Klemm & Golub, P.C. ("NKG"). (*See*

-3-

Klemm Cert. at ¶ 13 [Appendix at 20a].)

9.      Accordingly, all of the K&A files were moved to NNZ, and this is relevant to the matter at hand because a large amount of data was unable to be transferred, due to the fact that the two firms had different software programs. (*See* Klemm Cert. at ¶ 14 [Appendix at 20a].)

10.     Consequently, if an NNZ employee opened a former K&A file, there might be limited information—or even no information—as to what happened to the file when it was with K&A. (*See* Klemm Cert. at ¶ 15 [Appendix at 20a].)

11.     In the matter at hand, after the transfer to NNZ, the file for Plaintiff's account correctly noted that there was no judgment in place and that there was no lawsuit pending, but it did not—and still, to this day, does not—contain any information about the previously-withdrawn collection suit. (*See* Klemm Cert. at ¶ 16 [Appendix at 20a].)

12.     Had the file contained this information, NNZ still may have filed suit and requested service at the same address again, since the aforementioned third party letter is not definitive proof that Plaintiff was not properly served. (*See* Klemm Cert. at ¶ 17 [Appendix at 20a].)

13.     Ideally, though, NNZ would have preferred to investigate the matter further before filing a second lawsuit. (*See* Klemm Cert. at ¶ 18 [Appendix at 20a].)

14.     However, since the transferred file did not contain any information about the first collection suit, on January 6, 2009, NNZ filed suit in the Philadelphia Municipal Court under docket number SC-09-01-06-3327 (the "second collection suit").  (*See* Klemm Cert. at ¶ 19 [Appendix at 20a]; Klemm Cert. at "Exhibit A" [Appendix 24a-45a].)

15.     Accordingly, the filing of the second suit, and requesting service at the same address, was, at worst, a good faith mistake, and there was no ill intent and/or nefarious motives for doing so.[1]  (*See* Klemm Cert. at ¶ 20 [Appendix at 21a].)

16.     On January 21, 2009, NNZ had no reason to know it had made a potential mistake because the affidavit of service reflected that service had been properly effectuated.  (*See* Klemm Cert. at ¶ 20 [Appendix at 21a]; Klemm Cert. at "Exhibit B."[2])

17.     In fact, NNZ-NKG had no reason to know it made a potential mistake at any point in time after January 21, 2009, because the file nowhere reflects that

---

1.     Accordingly, it is improper for Plaintiff to continually state that Defendant's "knowingly" filed suit at an improper address.  (*See* Plaintiff's Appellant's Brief at 1; Plaintiff's Appellant's Brief at 3.)

2.     Although part of Defendants' moving papers, Plaintiff has not included this document in his Appendix.  Nevertheless, it is undisputed that the Affidavit of Services states that a process server named Jonas Show served an individual named Frances on January 21, 2009, at 9:15 a.m., and noted that she was the "adult in charge of Defendant's residence."  A copy of this document will gladly be provided to the Court upon request.

there was any issue and/or problem with service of process—and Defendants had no idea Plaintiff was making this claim until he filed the instant federal lawsuit.  (*See* Klemm Cert. at ¶ 22 [Appendix at 21a].)

18.    In any event, since no notice of defense was filed, on March 5, 2009, the state court entered default judgment against Plaintiff in the amount of $1,182.39. (*See* Klemm Cert. at ¶ 23 [Appendix at 21a]; Klemm Cert. at "Exhibit C."[3])

19.    Although this judgment remains open and outstanding, the NNZ-NKG collection efforts attempted on this file were minimal: On or about May 24, 2010, NKG mailed a letter to Plaintiff notifying him of the judgment, and on February 23, 2012, NKG left a voicemail message for Plaintiff.  (*See* Klemm Cert. at ¶ 25 [Appendix at 21a].)

20.    The aforementioned voicemail on February 23, 2012, was the final collection attempt made on this file, and there have been no collection efforts made since that date.  (*See* Klemm Cert. at ¶ 26 [Appendix at 21a].)

21.    On or about June 29, 2015—over six years after the judgment was entered and over three years after the last collection effort took place—Plaintiff initiated the instant action against Defendants, alleging that the default judgment

---

3.    Plaintiff likewise failed to include this document in his Appendix as well.  However, it is undisputed that the order enters default judgment against Plaintiff in the total amount of $1,182.39, effective March 5, 2009.  A copy of this document will gladly be provided to the Court upon request.

obtained in the second collection suit violates the FDCPA. (*See generally* Plaintiff's First Amended Complaint [Appendix 6a-10a].)

## II.    PROCEDURAL HISTORY.

On June 29, 2015, Plaintiff and his wife, Jacquelyne Rotkiske, filed a complaint in the United States District Court of the Eastern District of Pennsylvania, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 to 1681x, violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 to 1692o, and a common law claim of loss of consortium.

On October 19, 2015, Plaintiff filed an amended complaint, which omitted his wife as a co-plaintiff, and which alleged only violations of the FDCPA. (*See generally* Plaintiff's First Amended Complaint [Appendix 6a-10a].)

On October 30, 2015, Defendants filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 56(a), a portion of which has been included in the appendix to Appellant's Brief. (*See* Appendix 11a-69a.)

On November 10, 2015, Plaintiff filed a brief in objection to Defendants' motion (*see* Appendix 70a-76a), and on November 17, 2015, Defendants filed a reply brief (*see* Appendix 77a-89a).

On December 9, 2015, the trial court entertained oral arguments (*see* Appendix 90a-114a), and ultimately, on March 15, 2016, entered an opinion and order

dismissing the First Amended Complaint with prejudice (both of which are included in Volume I of Appellant's Brief).

On March 22, 2016, Plaintiff filed a Notice of Appeal seeking review of the trial court's March 15th ruling. Plaintiff ultimately filed his Brief and Appendix on September 23, 2016. Accordingly, pursuant to Fed. R. App. P. 26(a)(1)(C) and 31(a)(1), the instant Brief, which is being submitted via CM/ECF on Monday, October 24, 2016, has been timely filed.

## SUMMARY OF THE ARGUMENT

It is clear that the discovery rule cannot be applied to the FDCPA's statute of limitations—especially in the matter at hand where suit was filed over *five years* after the statute expired—because of the clear wording of the statute itself, because the statute is an unambiguous "occurrence" statute, because if Congress wanted to add a discovery rule it would have done so, and because the case law is overwhelmingly in Defendants' favor.

## LEGAL ARGUMENT

## I.    THE WORDING OF § 1692k(d) IS CLEAR AND UNAMBIGUOUS, AND THEREFORE IT MUST BE APPLIED AS WRITTEN.

This matter concerns the interpretation of a federal statute—namely, the FDCPA's statute of limitations—and the procedures for doing so are well settled.

The starting point in interpreting a statute is its language, and "[i]f the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See also Barnhart, Commissioner of Social Security v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) ("the inquiry ceases if the statutory language is unambiguous") (citations and internal quotation marks omitted); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 452 (1987) (Scalia, J., concurring) ("if the language of a statute is clear, that language must be given effect—at least in the absence of a patent absurdity," and any deviation from this "venerable principal" is "ill-advised").

With regards to the matter at hand, it is important to emphasize that "[i]t is not for [the courts] to try to avoid the conclusion that Congress did not mean what it said .... when Congress, through perhaps mistakenly or inadvertently, has used language which plainly brings a subject matter into a statute, its word is final." *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 64 (1953). "Courts are not free to read into the language what is not there, but rather should apply the statute as written." *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994), *cert. denied*, 513 U.S. 1135 (1995). In other words, if the statutory language "is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Id.* (quoting *Caminetti v. United*

-9-

*States*, 242 U.S. 470, 485 (1917) (internal quotation marks omitted)).  Quite simply,

"if the statutory language is not ambiguous, then [the court does] not engage in

interpretation of the statute, but merely in its application."  *Id*.

The relevant statute in the matter at hand is 15 U.S.C. § 1692k, which reads in

its entirety as follows:

> **(d) Jurisdiction.**  An action to enforce any liability created
> by this subchapter may be brought in any appropriate
> United States district court without regard to the amount in
> controversy, or in any other court of competent
> jurisdiction, *within one year from the date on which the
> violation occurs*.

15 U.S.C. § 1692k(d) (emphasis added).  Plaintiff's claim is that § 1692k(d) contains

an implied "discovery rule," *i.e.*, that the limitations period should begin running not

on the date that is actually set forth in the statute, but on the date on which he

purportedly *learned* of the alleged violation—which, again, was over *four years* after

the alleged violation occurred.

With all due respect to Plaintiff, this position flies in the face of the foregoing

authority.  Plaintiff is attempting to argue exactly what the above-cited opinions

prohibit.  There is absolutely nothing remotely ambiguous or unclear about the phrase

"within one year from the date on which the violation occurs," and there is not a

single word contained in § 1692k(d) that suggests or even implies an alternate time

frame would be acceptable—let alone one that would exponentially increase the

limitations period and explicitly contravene the directives of Congress. Section 1692k(d) is about as clear and unambiguous as a statute can possibly be, and again, "if the language of a statute is clear, that language must be given effect." *INS*, 480 U.S. at 452 (1987). Since courts are not free to read language into a statute that is not there, and instead must apply the statute as written, *Murphy*, 35 F.3d at 145, then in light of the clear and unambiguous language of § 1692k(d), Defendants respectfully submit that it would be inappropriate to conclude the discovery rule is applicable. Simply put, since § 1692k(d) leaves no doubt as to what Congress intended, it must be applied as written.

## II.    SECTION 1692k(d) IS AN OCCURRENCE STATUTE, NOT A DISCOVERY STATUTE, AND ITS LIMITATIONS PERIOD SHOULD BE APPLIED ACCORDINGLY.

The FDCPA's statute of limitations is known as an "occurrence" statute, and the case law makes clear that the limitations period should run from the date of the alleged violation and not the date of discovery. *See*, *e.g.*, *Thompson v. Ocwen Fin. Corp.*, No. 3:13-cv-386, slip op. at 7 (D. Conn. Aug. 27, 2013) ("[T]he FDCPA [is an] 'occurrence' statute[ ]. In other words, [the plaintiff's] FDCPA ... claims accrued ... at the time of the alleged violations rather than at the time [the plaintiff] claims to have discovered them") (citations omitted); *Grigoriou v. First Resolution Investment Corp.*, No. 13-cv-6008, slip op. at 12 (W.D.N.Y. Mar. 26, 2014) ("as [§ 1692k(d)]

indicates, the one-year period runs from the date the defendant committed the violation, not the date of discovery"); *Snyder v. U.S. Equities Corp.*, 12-cv-6092, slip op. at 8 (W.D.N.Y. Jan. 28, 2014) (same).

There are frankly not a lot of opinions that discuss this point with regards to the FDCPA—a likely result of how clearly and unambiguously § 1692k(d) is worded. However, there are plenty of other statutes that share a similar wording, and the cases that have examined them are instructive.  For example, the Indiana Medical Malpractice Act states that, generally, suit must be brought "within two (2) years after the date of the alleged act."  Ind. Code § 34-18-7-1(b).  The Supreme Court of Indiana has held that this statute 'is an 'occurrence' statute as opposed to a 'discovery' statute, *Brinkman v. Bueter*, 879 N.E.2d 549, 553 (Ind. 2008), and that as such, "[t]he time therefore begins to run on the date the alleged negligent act occurred, not on the date it was discovered."  *Id.* (citing *Martin v. Richey*, 711 N.E.2d 1273, 1278 (Ind. 1999)).  *See also Mitchell v. Collagen Corp.*, 870 F. Supp. 885, 888 (N.D. Ind. 1994) (interpreting the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-5(b), similarly: "Because the statute unambiguously commences the limitations period on an 'occurrence' rather than 'accrual' of the cause of action, the period runs from that occurrence regardless whether the resultant damage can be ascertained").

Similarly, in *Kindle v. Morisset, Schlosser, Ayer & Jozwiak*, 217 F.3d 602 (8th Cir. 2000), the Eighth Circuit Court of Appeals interpreted South Dakota's statute of

limitations on legal malpractice, which stated that "[a]n action against a licensed attorney, his agent or employee, for malpractice ... can be commenced only within three years after the alleged malpractice, error, mistake or omission shall have occurred." S.D. Codified Laws § 15-2-14.2. The Eighth Circuit concluded that this statute is an occurrence statute, and that as such, the time "begins to run at the time of the allegedly unprofessional or negligent advice," not when said act is discovered by a potential plaintiff. *Kindle*, 217 F.3d at 603.

Finally, the Connecticut statute of limitations for torts provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. General Statutes § 52-577. In *Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553 (Conn. 2014), the Supreme Court of Connecticut acknowledged that § 52-577 is an occurrence statute, and that as such, the limitations period "begins to run as of the date the complained of conduct occurs, and not the date when the plaintiff first discovers his injury." *Flannery*, 94 A.3d at 569 (citation omitted). *See also Bello v. Barden Corp.*, 180 F. Supp. 2d 300, 310 (D. Conn. 2002) ("[§ 52-577] is an occurrence statute, so the limitations period begins to run at the moment the act or omission complained of occurs .... The start of the running of the limitations period is not delayed until the cause of action has accrued or the injury has occurred .... It is not delayed until the date when the plaintiff first discovers the injury") (citations omitted).

It is thus clear that § 1692k(d) is an occurrence statute, and that its limitations period should be applied accordingly.  It plainly states that suit must be filed "within one year from the date on which the violation occurs."  Consequently, because it "unambiguously commences the limitations period on an 'occurrence' rather than 'accrual' of the cause of action, the period runs from that occurrence regardless whether the resultant damage can be ascertained."  *Mitchell*, 870 F. Supp. at 888.  Therefore, the very nature of § 1692k(d) itself—*i.e.*, the fact that it is an occurrence statute, as opposed to a discovery statute—prevents the discovery rule from being applied.

## III.    THE FACT THAT CONGRESS HAS NOT CHANGED THE WORDING OF § 1692k(d) IS PROOF THAT ITS MEMBERS ARE SATISFIED WITH THE STATUTE'S CURRENT WORDING.

As set forth above, if a statute is clear and unambiguous, then the need for statutory interpretation does not arise.  *Murphy*, 35 F.3d at 145.  *See also Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492 (1947) (if no ambiguity, then no need to resort to the examination of legislative history).  Nevertheless, for the sake of thoroughness, it is worth noting that the legislative history supports Defendants' position in this regard.

Specifically, the FDCPA is not a new statute.  Congress enacted it in 1977, nearly forty years ago, and while it has undergone various minor changes and

amendments over the years, the above-quoted "occurrence" language of § 1692k(d) has remained entirely intact. In fact, Congress amended § 1692k merely six years ago, *see* Pub. L. 111-203, title X, § 1089(1), July 21, 2010, 124 Stat. 2092, but chose to keep subsection (d)'s "occurrence" language in place.

It is thus entirely reasonable to conclude that, if Congress wanted to make this statute more consumer-friendly, it would have done so a long time ago. In *TRW, Inc. v. Andrews*, 534 U.S. 19 (2001), a case which will be extensively discussed below, the Supreme Court noted that previous cases, such as *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997), have cemented the traditional rule that "[a]ll statutes of limitation begin to run when the right of action is complete" regardless of whether a plaintiff "has no knowledge of his right to sue." *TRW*, 534 U.S. at 37. The late Justice Scalia noted in his concurrence that "Congress has been operating against the background rule recognized in *Bay Area Laundry* for a very long time. When it has wanted us to apply a different rule, such as the injury-discovery rule, it has said so." *Id.* at 38.

In furtherance of this point, Justice Scalia noted several statutes where Congress has added a discovery clause to the applicable statute of limitations: The statute governing computer fraud, 18 U.S.C. § 1030(g); the Securities Act of 1933, 15 U.S.C. § 77m; and the statute governing liability for hazardous substances, 42 U.S.C. § 9612(d)(2). *TRW*, 534 U.S. at 38. On top of these three examples, *TRW*

dealt with an FCRA claim, which has contained discovery language in its statute of limitations since its inception in 1970. *Id.* at 22; *see also* 15 U.S.C. § 1681p. Similarly, other credit-related statutes such as the Credit Repair Organizations Act, 15 U.S.C. § 1679i, and the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(f), likewise have discovery provisions or other extensions built into their respective statutes of limitations.

However, § 1692k(d) remains unamended, and still states that suit must be filed "within one year from the date on which the violation occurs," without any qualification, addition, or extension set forth therein. Justice Scalia, in his *TRW* concurrence, is absolutely correct: The *Bay Area Laundry* opinion is now nearly twenty years old, and Congress has had ample opportunity to update any statutes of limitations accordingly. If its members had wanted to amend the language of the FDCPA's statute of limitations, then they would have done so. Therefore, the fact that they have not is demonstrable proof that the legislative intent supports the statute's current "occurrence only" wording.

## IV.   A CAREFUL STUDY OF THE APPLICABLE CASE LAW REFLECTS THAT IT SUPPORTS DEFENDANT'S POSITION IN THIS REGARD.

### A.   The Initial Two Cases: *Mattson* and *Maloy*.

Circuit courts have split when determining whether the discovery rule applies to the FDCPA's statute of limitations. The Eighth Circuit Court of Appeals was the

first appellate court to decide this issue.  In *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259 (8th Cir. 1992), the debt collector mailed dunning letters to a consumer that violated the FDCPA, and the issue was whether the statute of limitations ran from the date on which the letters were mailed, or the date on which they were received (a difference that, unlike the matter at hand, concerned several days, not several years).  The Eighth Circuit Court of Appeals held that the statute should run from the date on which the letters were mailed, and the panel's reasoning is helpful here.

First, the court concluded that the overall point of the FDCPA was to regulate debt collectors, *see* 15 U.S.C. § 1692(e), so once the collector "placed the letters in the mail, its conduct with respect to any violation of the FDCPA was complete," and since the date on which the collector "mailed the letters was its last opportunity to comply with the FDCPA, ... the mailing of the letters, therefore, triggered § 1692k(d)."  *Mattson*, 967 F.2d at 261.  This reasoning is directly on point here because the acts alleged in the complaint occurred over six years ago—and five years after the statute of limitations expired—and the very purpose of a statute of limitations is to promote fairness to defendants by preventing prosecution of stale claims.  *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 428 (1964).

Second, *Mattson* concluded the date on which the violation occurred is "the better and more practical approach," since it may be "fixed by objective and visible

-17-

standards, ... [and] is easy to determine, ascertainable by both parties, and may be easily applied." *Mattson*, 967 F.2d at 261 (internal quotation marks omitted). This reasoning is likewise on point here because the date on which judgment was obtained is a date certain, whereas Plaintiff's vague claim that he recently found out about this matter on an unspecified date in September 2014 is undetermined, unsupported, and open to dispute—and, frankly, allowing such a limitless extension would open up the FDCPA to widespread abuse. "Statutes of limitations are not simply technicalities; on the contrary, they have long been respected as fundamental to a well ordered judicial system." *Board of Regents v. Tomanio*, 446 U.S. 478, 487 (1980).

Following *Mattson*, in 1995, the Eleventh Circuit Court of Appeals was confronted with the same issue, and ultimately followed *Mattson*. *See Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995) ("[w]e find the reasoning of the Eighth Circuit persuasive and adopt the approach used in *Mattson*"). In so doing, the Eleventh Circuit noted, with approval, the two aforementioned points that the mailing date was the collector's last opportunity to comply with the Act, and was also the more practical approach since it is a date easily ascertainable by both parties. *Id*.

Plaintiff states that *Mattson* and *Maloy* have been "called into doubt" (*see* Plaintiff's Appellant's Brief at 14), and cites *Benzemann v. Citibank, N.A.*, 806 F.3d 98 (2d Cir. 2015) to support this claim. However, *Benzemann* does absolutely not call into doubt either opinion. Rather, *Benzemann* simply distinguishes them by

-18-

stating that the concerns present there were not present in the matter at hand. *Id.* at 103. In fact, *Benzemann*, a case concerning an improper bank levy, actually follows the logic of *Mattson* by holding that the statute of limitations should run from the date on which the levy attaches because, like *Mattson*, such is the collector's "last opportunity" to comply with the FDCPA. *Id.*

Furthermore, citing *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), Plaintiff states that *Mattson* and *Maloy* have been have been called "dubious authority." However, this argument is either mistaken or disingenuous. It is true that *Johnson* refers to *Mattson* as "dubious authority," but this reference is *not* referring to *Mattson*'s refusal to adopt the discovery rule. In fact, *Johnson* specifically refuses to rule on this issue. *Id.* at 1113 n.3 ("it is unnecessary for us to consider whether a discovery rule applies to the FDCPA statute of limitations"). Rather, this reference is referring to the fact that *Mattson* ignored the longstanding principal that the day of the violation is not counted in calculating the running of the statute of limitations. *Id.* at 1115. Accordingly, with regards to the disapproval of the discovery rule, *Mattson* and *Maloy* are still completely valid decisions, and Plaintiff's attacks on them are wholly without support.

### B.    The Landmark Supreme Court Case of TRW.

In 2001, the Supreme Court decided *TRW*, *supra*, 534 U.S. 19.  Although this decision pertained to the FCRA, and not the FDCPA, it is nonetheless extremely helpful to the instant dispute.  *TRW* simply concerned whether the discovery rule should apply to FCRA cases.  As noted above, the FCRA's statute of limitations is contained in § 1681p, and at the time read in pertinent part as follows:

> An action to enforce any liability created under this title may be brought ... within two years from the date on which the liability arises, except that where a defendant has materially misrepresented any information required under this title ... the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

15 U.S.C. § 1681p (this section has since been amended to the earlier of two years after the date of discovery or five years after the date of the violation).  Basically, then, the FCRA's statute was worded similarly to the FDCPA's statute (although the FDCPA's "date on which the violation occurs" is clearly stronger "occurrence" language than the FCRA's "date on which the liability arises"), but with an extra discovery section for certain material misrepresentations.

The violation in *TRW* did not concern the material misrepresentation section of the statute that incorporates the discovery rule.  However, that did not stop the lower court—the Ninth Circuit Court of Appeals—from applying the discovery rule to the plaintiff's claim.  By way of background, the Ninth Circuit routinely applies

-20-

the discovery rule to virtually all federal statutes, because its judges are under the belief that "the general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury." *Mangum v. Action Collection Serv., Inc.* 575 F.3d 935, 940 (9th Cir. 2009) (citation and internal quotation marks omitted).

*TRW* reversed the Ninth Circuit and held that "a discovery rule does not govern § 1681p." *TRW*, 534 U.S. at 23. The Supreme Court noted that the Ninth Circuit's position parts ways with four other circuits regarding FCRA cases, including this one, *Houghton v. Ins. Crime Prevention Institute*, 795 F.2d 322 (3d Cir. 1986), *see TRW*, 435 U.S. at 26, and concluded that it stemmed from the Ninth's Circuit's misinterpretation of an earlier Supreme Court case, *Holmberg v. Armbrecht*, 327 U.S. 392 (1946). *TRW*, 534 U.S. at 27. However, *Holmberg* "stands for the proposition that equity tolls the statute of limitations in cases of fraud or concealment; it does not establish a general presumption applicable across all contexts." *TRW*, 534 U.S. at 27. Further, the Court noted that the only other cases where they have recognized a discovery rule are for claims involving latent disease and medical malpractice, "where the cry for [such a] rule is loudest." *Id.* (citations and internal quotation marks omitted).

Further, the Court noted that, although it had previously observed that lower federal courts generally apply a discovery rule when a statute is silent on the issue,

the Supreme Court has not adopted that position as its own—"[a]nd, beyond doubt, we have never endorsed the Ninth Circuit's view that Congress can convey its refusal to adopt a discovery rule only be explicit command, rather than by implication from the structure or text of the particular statute." *Id*. Quite simply, the Court held that the Ninth Circuit erred because the FCRA, which governs virtually the same type of law as does the FDCPA, "does not govern an area of the law that cries out for the application of a discovery rule." *Id.* at 28.

In fairness, the gravamen of the Court's decision centered on the fact that, because § 1681p contains an imbedded discovery rule only for certain material misrepresentations, one cannot logically conclude that an unstated discovery rule also applies to other types of FCRA violations: "[W]ere we to adopt [the plaintiff's] construction of the statute, the express exception would be rendered insignificant, if not wholly superfluous." *Id*. at 31. However, a careful reading of the opinion as a whole makes it very clear that the discovery rule should not apply to a statute that has almost the exact same wording as § 1692k(d). In fact, the Court noted that a statute of limitations measured from the date on which "a cause of action arises" would incorporate the injury-occurrence rule, discussed above, not the injury discovery rule. *TRW*, 534 U.S. at 32.

However, while the majority opinion opted not to incorporate the discovery rule issue into its holding, the concurrence showed no such restraint:

-22-

[T]he Court of Appeals based its decision on what it called the "general federal rule" .... The Court declines to say whether that expression of the governing general rule is correct .... There is in my view little doubt that it is not, and our reluctance to say so today is inexplicable, given that we held, a mere four years ago, that a statute of limitations [commences when the cause of action is complete] ....

This is unquestionably the traditional rule: Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief .... That a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not postpone the period of limitation ....

The injury-discovery rule applied by the Court of Appeals is bad wine of recent vintage. Other than our recognition of the historical exception for suits based on fraud ... we have deviated from the traditional rule and imputed an injury discovery rule to Congress on only one occasion ... We did so there because we could not imagine that legislation as "humane" as the Federal Employers' Liability Act would bar recovery for latent medical injuries .... The cases in which the statute of limitations may be suspended by caused not mentioned in the statute itself are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.

*Id*. at 35-38 (citations and internal quotation marks omitted). While not part of the

majority opinion, the fact that the Supreme Court has only once added a discovery

rule to a statute of limitations is inconvertibly strong evidence in favor of Defendants'

position. The bottom line here is that *TRW* makes it explicitly clear that adding a

discovery rule to a statute that is clear and/or an area of law that does not "cry out" for same is a reversible error. The fact that the FCRA's statute shares almost the same wording as the FDCPA's statute, as well as the fact that the FCRA governs a similar body of law as does the FCDPA, operates as almost conclusive proof that Plaintiff's position in this regard is without merit.

### C.    The Current Post-*TRW* Landsape.

While there is still technically a circuit split regarding the discovery rule as it pertains to FDCPA cases, there is no question that *TRW* has changed the landscape in this regard. For example, in *Johnson, supra*, 305 F.3d 1107, the Tenth Circuit Court of Appeals declined to decide the discovery rule issue, but noted that its traditional adherence to the rule had been rendered uncertain by *TRW*. *Id.* at 1113 n.3. Similarly, *Peterson v. Portfolio Recovery Associates, LLC*, 430 F. App'x 112 (3d Cir. 2011), the Third Circuit Court of Appeals likewise did not decide the discovery rule issue, but it did cite to *Mattson* and *Maloy* with approval, stating that it is entirely reasonable for the FDCPA's statute of limitations to begin to run on the date of the debt collector's last opportunity to comply with the Act. *Id.* at 115.

The recent case of *Butler v. J.R.S-I, Inc.*, No. 15-cv-6059 (N.D. Ill. Apr. 4, 2016), contains a good, thorough discussion of how *TRW* has affected these types of cases. There, the plaintiff argued that the discovery rule should be applied on an

FDCPA claim, and the court, quite frankly, stated that "[t]hat argument is difficult to reconcile with *TRW*." Slip op. at 6. *Butler* reasoned that, like the FCRA in *TRW*, the FDCPA is also not "silent" on when the limitations period commences. *Id*. at 7. The inclusion of the occurrence language of § 1692k(d), coupled with the absence of any language indicating that the limitations period commences upon the plaintiff's discovery of her claim, "arguably supports the 'standard rule' ... that a claim accrues when the plaintiff has a complete and present cause of action." *Butler*, slip op. at 7.

*Butler* further noted that two courts of appeals have ruled after *TRW* that the discovery rule applies in FDCPA suits, but observed, correctly, that one did so in an unpublished opinion, *Lembach v. Bierman*, 528 F. App'x 297, 301-02 (4th Cir. 2013), and the other did so as a matter of intra-circuit *stare decisis*, *Mangum, supra,* 575 F.3d at 939-41. *Butler*, slip op. at 7. Further, *Lembach* contains virtually no analysis or reasoning on this point whatsoever, and simply says "[w]e see no reason not to apply the discovery rule in this case." *Id.* at 301. Obviously, then, this issue was not briefed to the extent that it has been briefed here. *Mangum*, on the other hand, is entirely distinguishable because it concerned a difference of six days—not six years—between when the violation occurred and when it was discovered. Clearly, there is a colossal difference between extending a limitations period by a *de minimus* amount, and granting a party one that is *six times* longer than Congress intended. Further, the *Butler* court is correct with its *state decisis* remark: The *Mangum* opinion

openly states that it simply following well established Ninth Circuit precedent with regards to the discovery rule, *id.* at 941, and this precedent is not binding here, nor is it particularly persuasive after *TRW*.

In short, not a single case Plaintiff cites damages Defendants' claim in this regard: *Mangum* is factually distinguishable and follows the Ninth Circuit rule that few other circuits, if any, still follow: *Lembach* is unpublished and basically avoids any discussion or analysis on this issue whatsoever: *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440 (5th Cir. 2013) declines to even address this issue, *id.* at 449 n.18; *Benzemann*, 806 F.3d 98 likewise declines to address this issue, *id.* at 103 n.2; *Johnson*, 305 F.3d 1107 actually supports Defendants' position because the Tenth Circuit notes its traditional adherence to the discovery rule has been rendered uncertainly by *TRW*, *id.* at 1113 n.3; and *Santos* and *Irwin* will be addressed below.    Therefore, despite Plaintiff's claims to the contrary, the case law overwhelmingly supports Defendants' position in the matter at hand.

## V.    PLAINTIFF'S ARGUMENT THAT THE FDCPA'S STATUTE OF LIMITATIONS IS NOT JURISDICTIONAL DOES NOT HELP HIS CASE.

Plaintiff states that the United States Supreme Court has held that federal statutes of limitations are not jurisdictional.  (*See* Plaintiff's Appellant's Brief at 13.) First of all, Plaintiff's assertion is incorrect: The Supreme Court has actually held that

some federal statutes of limitations *are* jurisdictional.  *See*, *e.g.*, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008).  Second, the Supreme Court has not yet decided whether the FDCPA's statute of limitations is jurisdictional.  *See*, *e.g.*, *Moss v. Barton*, No. 13-cv-2535, slip op. at 5 (E.D. Mo. Apr. 8, 2016), a newer case that is still apparently under the impression that the FDCPA's statute of limitations is jurisdictional.  Third, the cases Plaintiff cites do not appear to support the claim he is trying to make.  *Santos v. United States*, 523 F. Supp. 2d. 435 (M.D. Pa. 2007) basically just cites *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89 (1990), and *Irwin* simply stands for the proposition that there is a rebuttable presumption of equitable tolling embedded in federal statutes—an issue that is not being argued here.

Finally, if the Court were to determine that the FDCPA's statute of limitations is jurisdictional, then that is where the inquiry would end, because a court would not have subject matter jurisdiction of a time-barred claim, and as such, the discovery rule could not be applied.  However, if the Court were to determine that the statute is not jurisdictional, then all the arguments contained in the previous sections would still apply, and Plaintiff's arguments would still be fatally defective for all the aforementioned reasons.  Therefore, this issue simply represents another hurdle for Plaintiff in this regard: Even if the Court agrees that the FDCPA's statute of limitations is not jurisdictional, then Plaintiff's claim remains without merit for all the other reasons set forth herein.

-27-

## VI.    IF THE COURT DETERMINES THAT FED. R. CIV. P. 56 SHOULD HAVE BEEN USED, THEN PLAINTIFF FAILED TO SUPPORT HIS CLAIM REGARDING THE DATE ON WHICH HE PURPORTEDLY LEARNED OF THE JUDGMENT.

Since Defendants' motion to dismiss contained matters outside the pleadings, it is arguable that the motion could have been "treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the Court is inclined to agree with this assessment, then Plaintiff should have provided actual evidence in his objection, because "unsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (party opposing summary judgment must present more that just "mere allegations, general denials, or ... vague statements" to show the existence of a genuine issue).

However, Plaintiff's objection failed to contain an affidavit or certification from Plaintiff—let alone any actual evidence—supporting his claim that he was not served with the summons and complaint in the underlying collection action, and more importantly, whether he really did only find out about the six-year-old default judgment in September 2014. Without any evidence to support these claims, it was clear the district court was correct to dismiss Plaintiff's complaint.

## CONCLUSION

Therefore, for the aforementioned reasons, Plaintiff respectfully requests that the Court affirm the ruling of the United States District Court for the Eastern District of Pennsylvania, which dismissed Plaintiff's complaint for failure to state a claim upon which relief can be granted.

Respectfully Submitted,
Fenton & McGarvey Law Firm, P.S.C.


Dated: October 24, 2016          By:   /s/Carl E. Zapffe
                                 Carl E. Zapffe, Esq.
                                 N.J. Attorney ID No. 04564-2004
                                 Fenton & McGarvey Law Firm, P.S.C.
                                 2401 Stanley Gault Parkway
                                 Louisville, KY 40223
                                 502-560-6700 (Phone)
                                 502-560-6800 (Fax)
                                 973-945-8808 (Cell)
                                 czapffe@fenton-mcgarvey.com

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-1668

———————

KEVIN ROTKISKE,

Appellant-Plaintiff,

v.

PAUL KLEMM, ESQ.; NUDELMAN,
KLEMM & GOLUB, P.C.; NUDELMAN,
NUDELMAN & ZIERING, P.C.; and
KLEMM & ASSOCIATES,

Appellees-Defendants.

———————————————

**Appellees' Combined Certifications**

———————————————

I, Carl E. Zapffe, Esq., being of full age and duly sworn according to law, upon my oath, depose and certify as follows:

1.    Pursuant to 3d Cir. L.A.R. 28.3(d), I hereby certify that I am a member of the bar of this Court.  I was admitted on March 29, 2016, and I am currently in good standing.

2.    Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the enclosed brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because it contains 6,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I also hereby certify that the enclosed brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface using WordPerfect X5 in 14-point Times New Roman.

3.    Pursuant to 3d Cir. L.A.R. 31.1(c), I hereby certify that the text of the enclosed electronic brief, which has been e-filed via CM/ECF, is identical to the text of the paper copies which have been mailed to both the clerk and counsel for the appellant.

4.    Pursuant to 3d Cir. L.A.R. 31.1(c), I hereby certify that a virus detection program has been run on the enclosed brief, and all attachments, and that no virus was detected.  The name of the virus detection program used was Kaspersky Endpoint version #10.

5.    I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Respectfully Submitted,
Fenton & McGarvey Law Firm, P.S.C.


Dated: October 24, 2016                    By:  */s/Carl E. Zapffe*
                                           Carl E. Zapffe, Esq.
                                           N.J. Attorney ID No. 04564-2004
                                           Fenton & McGarvey Law Firm, P.S.C.
                                           2401 Stanley Gault Parkway
                                           Louisville, KY 40223
                                           502-560-6700 (Phone)
                                           502-560-6800 (Fax)
                                           973-945-8808 (Cell)
                                           czapffe@fenton-mcgarvey.com

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-1668

———————

KEVIN ROTKISKE,

Appellant-Plaintiff,

v.

PAUL KLEMM, ESQ.; NUDELMAN,
KLEMM & GOLUB, P.C.; NUDELMAN,
NUDELMAN & ZIERING, P.C.; and
KLEMM & ASSOCIATES,

Appellees-Defendants.

———————————————————

**Appellees' Proof of Service**
**(Pursuant to Fed. R. App. P. 25(d))**

———————————————————

I, Carl E. Zapffe, Esq., being of full age and duly sworn according to law, upon

my oath, depose and certify as follows:

1.      I am a duly licensed attorney of the State of New Jersey, and I am a

member of the bar of this Court.  I represent all of the above-captioned Appellees, and

as such, I am fully familiar with the facts and assertions contained herein.

-33-

2.    On October 24, 2016, I electronically filed Appellees' Brief via CM/ECF, which caused a copy to be served on the clerk and on Appellant's counsel via the Court's electronic docketing system.

3.    Additionally, on October 25, 2016, I will mail one (1) copy of Appellees' Brief, and all attachments, via Priority mail, to Appellant's counsel: Matthew B. Weisberg, Esq., Weisberg Law, 7 South Morton Avenue, Morton, PA 19070.

4.    Finally, on October 25, 2016, I will mail seven (7) copies of Appellees' Brief (one of which was an original signed copy), and all attachments, via Priority mail, to the Clerk of this Court: Office of the Clerk, United States Court of Appeals for the Third Circuit, James A. Byrne United States Courthouse, 601 Market Street, Room 21400, Philadelphia, PA 19106-1790.

5.    I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Respectfully Submitted,
Fenton & McGarvey Law Firm, P.S.C.

Dated: October 24, 2016

By:   */s/Carl E. Zapffe*
        Carl E. Zapffe, Esquire
        N.J. Attorney ID No. 04564-2004
        Fenton & McGarvey Law Firm, P.S.C.
        2401 Stanley Gault Parkway
        Louisville, KY 40223
        502-560-6700 (Phone)
        502-560-6800 (Fax)
        973-945-8808 (Cell)
        czapffe@fenton-mcgarvey.com